STATE, Respondent, v. KLEIN, Appellant.
SAME, Respondent, v. STERGER, Appellant.

*October 2—October 27, 1964.*

396

For the appellants there was a brief by *Dominic H. Frinzi* and *Nicholas C. Catania,* attorneys, and *James M. Shellow* and *Shellow & Shellow* of counsel, all of Milwaukee, and oral argument by *Mr. James M. Shellow* and *Mr. Dominic H. Frinzi.*

For the respondent the cause was argued by *Hugh R. O'Connell,* first assistant district attorney of Milwaukee

county, and *William A. Platz,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, and *William J. McCauley,* district attorney.

CURRIE, C. J.   These issues are raised on this appeal:

(1) Were the arrests of defendants in Michigan prior to the issuance of any warrant in Wisconsin illegal thereby rendering illegal the search and seizure made incidental to such arrests?

(2) Did the trial court commit prejudicial error in sustaining the state's objection to questions put to a witness by defendants' counsel which sought to ascertain when the witness first talked to the police about the case?

(3) Did the trial court ground its finding as to the value of the stolen merchandise upon improper evidence?

### *Legality of the Arrests.*

Inasmuch as the arrests complained of took place in Michigan the legality thereof is controlled by Michigan law. *United States v. Di Re* (1948), 332 U. S. 581, 589, 68 Sup. Ct. 222, 92 L. Ed. 210.

We find the controlling Michigan statute to be sec. 764.15, Mich. Comp. Laws (1948) (Mich. Stats. Anno. 28.874, sec. 15). The material portions of this statute provide:

"Any peace officer may, without a warrant, arrest a person—

" . . .

"(e) When he has received positive information by written, telegraphic, *teletypic, telephonic, radio* or other authoritative source that another officer holds a warrant for such arrest;

"(f) *When he has received such positive information broadcast from any recognized police or other governmental radio station, or teletype, as may afford him reasonable cause to believe that a felony has been committed and reasonable*

*cause to believe that such person has committed it; . . . ."*
(Italics supplied.)

Sec. 764.15, when originally enacted in 1927, did not contain sub. (f) nor the above italicized words of sub. (e), but in 1935 the statute was amended to add these.

At common law, when a felony has been committed in one state, a peace officer of another state may validly arrest without a warrant a person suspected of having committed such felony if reasonable grounds exist for the officer's belief that the arrested person is the one who committed the crime. *People v. Euctice* (1939), 371 Ill. 159, 20 N. E. (2d) 83; *Burton v. New York C. & H. R. R. Co.* (1911), 147 App. Div. 557, 132 N. Y. Supp. 628, affirmed without opinion (1912), 210 N. Y. 567, 104 N. E. 1127, and latter judgment affirmed (1917), 245 U. S. 315, 38 Sup. Ct. 108, 62 L. Ed. 314; *State v. Taylor* (1896), 70 Vt. 1, 39 Atl. 447; *Williams v. Commonwealth* (1925), 142 Va. 667, 128 S. E. 572; *State v. Spangler* (1938), 120 W. Va. 72, 197 S. E. 360; which overruled the earlier case of *George v. Norfolk & Western R.* (1916), 78 W. Va. 345, 88 S. E. 1036; Restatement, 1 Torts, p. 250, sec. 119, comment (*e*) and p. 259, sec. 121 (a) ; 5 Am. Jur. (2d), Arrest, p. 739, sec. 47; Perkins, Law of Arrest, 25 Iowa Law Review (1940), 201, 243. *Cunningham & Son v. Baker, Peterson & Co.* (1893), 104 Ala. 160, 16 So. 68, sometimes cited as being contra, expressly found it unnecessary to decide whether an arrest without a warrant could be made of a fugitive wanted for crime in another state.

This common-law rule with respect to arrest without a warrant of a fugitive wanted for felony in another state imposes no more stringent requirements than if such fugitive were wanted for crime in another part of the same state in which the arrest is made. Restatement, 1 Torts, p. 250, sec. 119, comment (*e*). A special note is inserted to comment

(*e*) explaining that the word "fugitive" as used in the text embraces persons who, for any purpose, have come into the state in which the arrest is made.

In *Johnson v. Reddy* (1955), 163 Ohio St. 347, 126 N. E. (2d) 911, the arrest without warrant in Ohio was made by police officers pursuant to teletype messages from Pennsylvania state police identifying suspect and advising that a felony had been committed in Pennsylvania and it was held that the arresting officers acted upon reasonable information. In its opinion the Ohio court stated (at p. 352) :

"And we believe that in making an arrest without a warrant at the request of another police agency all reasonable doubts concerning the reasonableness of the information on which the arresting officer acts should be resolved in his favor."

There are no Michigan cases decided prior to the enactment of sec. 764.15, Mich. Comp. Laws (1948), which hold that the prevailing common-law rule with respect to arrest without a warrant of fugitives from another state did not prevail in Michigan. In the absence of such an express holding we assume that such common-law rule was recognized in that state. *Malcolmson v. Scott* (1885), 56 Mich. 459, 23 N. W. 166, held an arrest without warrant in Michigan of a fugitive from Pennsylvania illegal because the letter from Pennsylvania requesting the arrest was insufficient to provide probable cause. Absence of probable cause was shown by the facts that the letter which purported to come from one Girin, chief of police of Philadelphia, was signed "J. H." in the name of Girin, and the letter failed to establish that a felony had been committed in Pennsylvania. The plain implication of this decision is that if Girin had personally signed the letter and had stated facts showing that the wanted person was suspected of having committed a felony in Pennsylvania, the arrest would have been held valid, although it was also

pointed out that no warrant had been issued in Pennsylvania for the fugitive.

In the later case of *Kratzer v. Matthews* (1926), 233 Mich. 452, 206 N. W. 982, a telegram from a captain of detectives to a Michigan sheriff, that the sender held a warrant for Kratzer's arrest for making a false statement and requesting his arrest, was held to provide probable cause for Kratzer's arrest in Michigan. We deem it wholly immaterial that, in distinguishing the *Malcolmson Case,* one of the distinguishing features was that the letter in the latter case did not state that a prosecution had been commenced or warrant issued. If Michigan prior to the enactment of sec. 764.15, Mich. Comp. Laws (1948) had a requirement that prosecution must have been started or a warrant issued before an arrest could be made without warrant, this statute eliminated that requirement.

Apparently the Michigan court has not construed sec. 764.15 (f), Mich. Comp. Laws (1948) with respect to whether or not the statutory words "from any recognized police or other governmental radio station, or teletype" is confined solely to those located in Michigan. Neither has it determined whether or not the further statutory words "reasonable cause to believe that a felony has been committed" refers only to felonies committed in Michigan. Since pre-existing common law drew no distinction between arrests without warrants of fugitives from other states and residents of the state, we conclude that no implied restriction should be read into the statute which would prevent the statute's application to fugitives from other states. We can conceive of no legislative purpose to restrict the common-law right to arrest without a warrant. It is a cardinal rule of statutory construction that rules of the common law are not to be changed by doubtful implication. *Leach v. Leach* (1952), 261 Wis. 350, 357, 358, 52 N. W. (2d) 896, and authorities therein cited.

In *Burton v. New York C. & H. R. R. Co., supra,* the New York appellate division construed a New York statute which authorized a peace officer to arrest without warrant "when a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it" with respect to whether it was applicable where the felony had been committed in another state. The court declared (132 N. Y. Supp., at p. 633) :

> *"Our statute does not require that the felony shall have been committed within this state,* nor does the common law. The authority to arrest without a warrant is general in a peace officer 'when a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it' (section 177, Code of Criminal Procedure), and people coming within this state have no right to complain if they are treated in the same manner that our own people are treated under the law." (Emphasis supplied.)

In 1937 Michigan enacted the Uniform Criminal Extradition Act, which Wisconsin had adopted in 1933, now comprising ch. 964, Wis. Stats. Included in such act is this provision :

> "The arrest of a person may be lawfully made also by any peace officer without a warrant upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or imprisonment for a term exceeding 1 year, . . ." Sec. 780.13, Mich. Comp. Laws (1948).

Defendants contend that this statute absolutely requires that before one wanted for commission of a felony in another state can be arrested without a warrant in Michigan, a warrant must be issued or some court proceeding instituted against the suspect in this other state. We find no merit in this contention.

The arrest referred to in this provision of the Uniform Criminal Extradition Act has reference to one which will support an extradition proceeding. In *Burton v. New York C. & H. R. R. Co., supra,* the argument was advanced that a person might not be arrested in New York until there had been compliance with sec. 2, sub. 2, art. IV, U. S. Const., and the implementing act of congress having to do with extradition. In disposing of this argument the New York court stated (132 N. Y. Supp., at p. 631) :

"The plaintiff cites many authorities for this proposition, but none of them, we apprehend, goes to the extent of holding that a citizen of a sister state may not be arrested in this state for a crime committed in such sister state until all of the steps have been taken which would justify the rendition of such person. As well say that a man might not be arrested in this state for murder until he has been formally charged with crime by a grand jury."

This holding was affirmed in *Burton v. New York C. & H. R. R. Co.* (1917), 245 U. S. 315, 38 Sup. Ct. 108, 62 L. Ed. 314, in an opinion by Mr. Justice BRANDEIS, who held that these provisions of the United States constitution and federal statutes do not deal with an arrest in advance of extradition.

In the later New York case of *People v. Ormsby* (1930), 136 Misc. 637, 241 N. Y. Supp. 225, 227, the court declared:

"A citizen of another state may be arrested in this state for a felony committed in another state, although all steps have not been taken which would justify the rendition of the persons so arrested.

"The right to arrest a nonresident suspected of committing a felony in a foreign state should be considered in the same manner as the right to arrest a resident."

See also *State v. Anderson* (S. C. 1833), 1 Hill 212 (*327).

Furthermore, defendants' contention ignores completely the existence of sec. 764.15 (f), Mich. Comp. Laws (1948), which authorized the instant arrests without any requirement of a warrant issued or prosecution begun in Wisconsin. This statute had been enacted two years prior to Michigan's adoption of the Uniform Criminal Extradition Act. By providing that radio or teletype messages will qualify as reasonable cause for the arresting officer to believe that the person to be arrested has committed a felony so as to justify an arrest without warrant, the Michigan legislature was undoubtedly cognizant of the use of airplanes and high-speed automobiles by escaping criminals. It is absurd to think that the legislature intended this statute not to allow arrests or the broadcasting or teletyping the request for arrest in case of a felony committed in another state until valuable time is lost in swearing out a warrant. If discovery of the felony occurred late at night or on a Sunday still more time would be lost by such procedure.

The provision of secs. 764.15 (f) and 780.13, Mich. Comp. Laws (1948), insofar as they relate to arrest without a warrant are *in pari materia* and must be construed together. Repeals by implication are not favored and thus it is the duty of the court, if possible, to construe these two sections so that both shall be operative. 1 Lewis, Sutherland, Statutory Construction (2d ed.), pp. 463, 464, sec. 247; *McLoughlin v. Malnar* (1941), 237 Wis. 492, 497, 297 N. W. 370. This requires that we hold that sec. 780.13 does not repeal by implication any part of sec. 764.15 (f), but applies solely to an arrest made to support an extradition, and not to one made independently thereof.

We conclude that the teletype message received by the Michigan state police from the Milwaukee police department was sufficient to afford probable cause for the Michigan police to believe that defendants had committed a felony.

Therefore, the arrest and the search made incidental thereto were valid.

*Rulings on Evidence.*

Behnke, a witness for the state, gave testimony that was damaging to defendants. On cross-examination the following transpired:

"*Mr. Cantania* [counsel for defendants] : *Q*. When is the first time you talked to any member of the Milwaukee Police Department regarding this case?

"*Mr. O'Connell* [assistant district attorney] : *A*. Objected to as being immaterial.

"*The Court:* Sustained."

"*Mr. Cantania: Q*. Did you at any time give a description to any member of the Milwaukee Police Department of this Impala automobile?

"*Mr. O'Connell:* Same objection.

"*The Court:* Sustained."

Upon the sustaining of this last objection counsel for defendants dropped this line of questioning without informing the trial court of its purpose. On this appeal it is contended that the above-quoted questions were asked for the purpose of ascertaining whether Behnke had furnished a written or recorded statement to the police, in order that the defense might request the court to have such statement made available for impeachment purposes. *State v. Richards* (1963), 21 Wis. (2d) 622, 124 N. W. (2d) 684, is cited in support of defendants' contention that it was error for the trial court to have ruled as it did.

The factual situation in the *Richards Case* is very different from that in the instant case with respect to alerting the trial court to the objective of these questions as to which objections were sustained. In *Richards,* defense counsel made

the following request to the trial court (21 Wis. (2d), at p. 628) :

" 'Will the court permit us to ask this witness whether or not in the month of September she gave a statement to the police and go into what, if anything—the different things she may or may not have said to the police. And after we have determined whether or not she has given a statement and what that statement was—then, have that statement to see whether it is consistent with what she now testifies to ?' "

In that case the trial court was specifically advised of defense counsel's purpose. Here defense counsel failed to state the purpose of the interrogation which was objected to. Without such an explanation it lay within the discretion of the trial court to conclude that the information sought was irrelevant to the issues of the case. Therefore, we find no error was committed in sustaining the objections to the questions propounded to Behnke.

Defendants further contend that the trial court improperly admitted into evidence over objection a carbon copy of a document when the original was in existence and not produced. It is claimed that this was prejudicial because the trial court grounded its finding of value of the stolen property on this document, state's Exhibit 1.

The stolen items of merchandise were the property of Kor-Rect Jewelry Manufacturing Company. Komula, secretary-treasurer of the corporation, and Parisey, its sales manager, had loaded these items into the trunk of Parisey's car at Green Bay before Parisey left for Milwaukee on June 25, 1962. Under Komula's direction a typed receipt for these was drafted in triplicate, consisting of an original and two carbons. No prices or values were then stated on the receipt. Exhibit 1 is one of the two carbon copies of this receipt. It bears the signature of Parisey and written in ink after the listed items are the prices or values thereof. The testimony establishes that these price or value figures were written on Exhibit 1 by Parisey in the presence of Komula shortly

before trial. Both Komula and Parisey testified to the correctness of such figures, which were the actual cost of the listed items as purchased by Kor-Rect from its suppliers. Komula testified that of his own knowledge he knew the items listed in Exhibit 1 were those loaded into the trunk of Parisey's car.

We hold that when Parisey placed his signature on Exhibit 1 at the time he receipted for the merchandise it became a duplicate orginal. Therefore, the objection on the ground that it was a carbon copy was properly overruled. Furthermore, even if it had not been signed by Parisey on June 25, 1962, his use of the carbon copy upon which to write down prices or values, coupled with testimony that the items stolen were correctly listed thereon and that the inserted prices or values represented Kor-Rect purchase prices, entitled Exhibit 1 to be received in evidence. Since it was not offered for the purpose of proving the original receipt, the objection that it was a carbon copy lacked validity.

On the issue of the admissibility of carbon copies generally, McCormick, Evidence (hornbook series), p. 420, sec. 206, states:

"But the fact that many counterparts today are made by the use of carbons and the notion that writings made by the same stroke are like counterparts has caused a growing number of courts to treat all carbons, when authenticated as true reproductions, as if they were duplicate originals, i.e., as admissible without accounting for the original."

On its face, our holding in *Mack Trucks, Inc., v. Sunde* (1963), 19 Wis. (2d) 129, 119 N. W. (2d) 321, would appear to be contrary to McCormick and the cases he cites insofar as a carbon copy of a letter mailed to another is concerned. We find it unnecessary to decide here whether the rule advocated by McCormick should be adopted by this court, or whether such a rule would encompass a carbon of a letter where the original has been mailed.

*By the Court.*—Judgment affirmed.