STATE, Respondent, v. TAYLOR, Appellant.*

*No. State 99. Argued September 10, 1973.—Decided October 15, 1973.*
(Also reported in 210 N. W. 2d 873.)

---

* Motion for rehearing denied, without costs, on November 27, 1973.

508

For the appellant there were briefs by *Anthony K. Karpowitz*, and oral argument by *Lawrence E. Norton II*, both of the Legal Aid Society of Milwaukee.

For the respondent the cause was argued by *Betty R. Brown*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

HEFFERNAN, J.

## I. Circuit Court Case No. H–5601.

Milwaukee Circuit Court Case No. H–5601 arose out of the armed robbery of a motel in the city of Milwaukee. The robbery was committed at the point of a sawed-off shotgun, during the evening hours of January 10, 1972. The desk clerk described the robber as a Negro male, approximately six feet three inches tall, weighing about 200 pounds, and wearing a tan coat. On the following morning the police presented a display of pictures of possible suspects to the desk clerk, but he was unable to make an identification. That evening, the defendant Taylor was arrested with two other persons under circumstances which he now claims constituted an illegal arrest without probable cause. His plea of guilty was apparently induced by the fact that the trial court refused to suppress articles of evidence which were the fruits of the illegal arrest. Under the recently created statute, sec. 971.31 (10), Stats., he takes his appeal from the order denying the motion to suppress the evidence.

The arrest was made under the following sequence of events. Shortly after 6 p. m. on the evening of January 11, 1972, a Milwaukee foot patrolman, Officer Rehorst, heard a broadcast from the central police dispatcher, which described persons whom he thought were "wanted" for armed robbery. In fact, subsequent information revealed that Officer Rehorst had misunderstood

the radio message. The dispatcher's records show that the following message was broadcast:

"Be on the lookout for below described auto and occupants. May commit armed robbery our city this evening. 1966 bluish gray Mustang bearing Wisconsin license X 55–546. Occupants 3 Negro males described as follows . . . .

"Believed to be armed with a sawed off shotgun and a .45 caliber automatic pistol.

"If car is observed keep under observation and contact Detective Bureau immediately."

The message described the automobile with particularity, but the description of none of the occupants matched the room clerk's description of the defendant. The message as dispatched did not ask for the arrest of the occupants, nor did it say that the occupants of the car were wanted for armed robbery. Nevertheless, Officer Rehorst testified that his understanding was that they were "wanted" for armed robbery. His good faith in this respect has not been questioned. A few minutes after Officer Rehorst received this message, he saw the automobile matching the broadcast description, including the license number. He immediately radioed other police officers in the vicinity that he had observed the wanted vehicle and that the passengers in it were three Negro males who were believed to be armed and who were wanted for armed robbery.

The message was received by Officer Leist, and within three or four minutes after hearing Rehorst's message, Leist and his partner in a squad car observed the blue Mustang. They gave chase and stopped the vehicle within a short distance. Officer Leist testified that his purpose in stopping the car, based on the information he had received in the message from Officer Rehorst, was to place the occupants under arrest for armed robbery. Officer Leist had not heard the message from the central dispatcher's office.

The occupants of the car were ordered to get out. They were informed that they were under arrest for armed robbery. When the passengers got out of the car, the interior of the car was illuminated by the lights of the squad car. At this time Leist saw a sawed-off shotgun on the rear seat of the car. Although a portion of the barrel was covered with a case, he saw enough of the object to immediately identify it for what it was. The gun was seen within seconds after the occupants got out of the car. It was seized by Officer Leist.

On the following morning the motel desk clerk was shown an additional display of photographs. The photographs now displayed included a picture of the defendant Taylor, who had been apprehended the night before. The desk clerk identified Taylor as the robber. He also identified the sawed-off shotgun as the one used in the robbery.

Taylor was charged in a complaint on January 12, 1972, and after a preliminary examination was bound over for trial to the circuit court. Upon arraignment he pleaded not guilty, but following the denial of his motion to suppress the evidence of the identification by the desk clerk of him and the sawed-off shotgun, his plea was changed to guilty. After a prima facie case was presented, the defendant was adjudged guilty and sentenced.

The defendant's motion was directed principally to the suppression of the sawed-off shotgun. If the arrest was proper, the shotgun was admissible as the result of a reasonable search for weapons incident to an arrest. The defendant argues, however, that the arrest was illegal in that, prior to the arrest, no probable cause had been established before a magistrate or otherwise that the defendant had committed any crime whatsoever. While an arrest without a warrant is lawful in some instances, defendant correctly points out that probable cause must be established as the basis for such an arrest. *Ker v. California* (1963), 374 U. S. 23, 83 Sup. Ct. 1623, 10 L. Ed.

2d 726. The record shows that, prior to the time of the arrest, there was no evidence of any police knowledge that linked the defendant with the robbery at the motel. The source of the central dispatcher's information has not been revealed. No warrant for the arrest of the three occupants of the Mustang had ever been issued. At and just prior to the arrest, the defendants were not acting suspiciously and there was nothing apparent in their conduct that would indicate that they were engaged in unlawful activities or were about to commit a crime. The description of the robber given to the police by the motel clerk did not match the physical characteristics of any of the three men in the Mustang. We conclude that no probable cause had been legally established that would justify either the issuance of a warrant or an arrest without a warrant.

Insofar as the record reveals, no person within the police department had reliable knowledge or information from any source which would warrant a prudent person to believe that Taylor had either committed an offense or was in the course of unlawful conduct. *See Beck v. Ohio* (1964), 379 U. S. 89, 85 Sup. Ct. 223, 13 L. Ed. 2d 142; *Leroux v. State* (1973), 58 Wis. 2d 671, 683, 207 N. W. 2d 589.

The arresting officer, however, believed there was probable cause for the arrest. He had received information that the occupants of the car were wanted for armed robbery. As was later revealed, the defendant was not wanted for armed robbery at the time of his apprehension and there was no probable cause then for arresting him.

The recent United States Supreme Court case of *Whiteley v. Warden* (1971), 401 U. S. 560, 91 Sup. Ct. 1031, 28 L. Ed. 2d 306, is instructive in this case. Therein, a police officer arrested the defendants on the basis of an all-state bulletin advising that the defendant and another were wanted for burglary. Prior to the broad-

cast, the sheriff of the county where the offense occurred signed a complaint before the local magistrate and secured a warrant. The defendants were arrested in another county. At the time of their arrest, the officers searched the interior of the car, where they found coins that corresponded with those taken in the robbery; and in the trunk, which they opened, they found burglary tools. It was later determined that probable cause had not been established for the issuance of a warrant, because sufficiently reliable information had not been presented to the magistrate. The court concluded that, where the initial arrest warrant was not based on probable cause, any subsequent arrest based on that warrant was illegal. The court stated, at pages 568, 569:

". . . the complaint on which the warrant issued here clearly could not support a finding of probable cause by the issuing magistrate. The arresting officer was not himself possessed of any factual data tending to corroborate the informer's tip that Daley and Whiteley committed the crime. Therefore, petitioner's arrest violated his constitutional rights under the Fourth and Fourteenth Amendments; the evidence secured as an incident thereto should have been excluded from his trial."

Since there was indeed a search in the constitutional sense in *Whiteley,* the burglary tools and the coins found in the vehicle should not have been used at trial. The state in *Whiteley,* however, made the argument that the officers who made the arrest had probable cause on the basis of the radio dispatch to believe that the individuals arrested were those described in the bulletin and that it was reasonable for them to assume that whoever authorized the bulletin had established probable cause for the arrest of the fugitives. The state in *Whiteley* argued, at page 568:

"To prevent arresting officers from acting on the assumption that fellow officers who call upon them to make an arrest have probable cause for believing the arrestees

are perpetrators of a crime would . . . unduly hamper law enforcement."

The supreme court responded to this argument by stating, at page 568:

"We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause."

Thus, the teaching of *Whiteley* is that an officer, acting in good faith on the basis of a police dispatch, may assume at the time of the apprehension that probable cause has been established. *Whiteley* thus establishes that it is reasonable for an officer relying on such a dispatch to apprehend the subject of the dispatch. It states the legal justification for the police officer making the intrusion and being at the site of what may later be determined to be an illegal arrest.

*State v. Klein* (1964), 25 Wis. 2d 394, 130 N. W. 2d 816, held that, in making an arrest without a warrant at the request of another police agency, all reasonable doubts concerning the reasonableness of the information on which the arresting officer acts should be resolved in his favor. *Klein* involved a teletype dispatch from one state to another, but the holding was based upon the common-law rule that the requirements within a jurisdiction and between jurisdictions is the same. In *Klein* the question of the underlying probable cause was not raised, but the case demonstrates that Wisconsin law permits a police officer, initially at least, to rely upon a dispatch from a fellow officer. Accordingly, under *Whiteley* and *Klein* a police officer, acting on information from a fellow officer, may assume probable cause has been established. If that underlying assumption proves, however,

to be false, the arrest is illegal, and any search made incident thereto is invalid and the fruits of the search are inadmissible.

In the instant case the arrest was illegal, but the question remains, under the circumstances here, whether the sawed-off shotgun should have been received in evidence. We conclude that the seizure of the sawed-off shotgun was not the result of an illegal search, but was the result of a "plain view" inspection by an officer who had the legal justification to be where he was at the time of its sighting.

*Coolidge v. New Hampshire* (1971), 403 U. S. 443, 91 Sup. Ct. 2022, 29 L. Ed. 2d 564, remains the principal explication of the "plain view" doctrine. *Coolidge* reiterates the well-established rule that, under certain circumstances, the police may seize evidence in "plain view" without a warrant. After a discussion of numerous "plain view" cases, *Coolidge* recites, at page 466:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, *or some other legitimate reason for being present* unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." (Emphasis supplied.)

In the instant case, since the arrest was illegal, it is obvious that under *Whiteley* and the long series of cases stemming in the federal jurisdiction from *Mapp v. Ohio* (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. 2d 1081, a "search" would be unjustified and any evidence seized would have to be suppressed

at trial. But numerous cases have held that a seizure following a "plain view" is not the product of a "search." In *Milburn v. State* (1971), 50 Wis. 2d 53, 183 N. W. 2d 70, and *Edwards v. State* (1968), 38 Wis. 2d 332, 156 N. W. 2d 397, we pointed out that no search in the constitutional sense controlled by the fourth amendment takes place when a police officer observes objects from a place where he has a right to be and seizes them. We said in *Edwards,* at page 338, " 'A search implies a prying into hidden places for that which is concealed.' It is not a search to observe what is in plain view." In *Harris v. United States* (1968), 390 U. S. 234, 236, 88 Sup. Ct. 992, 19 L. Ed. 2d 1067, the United States Supreme Court said:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

In the instant case, even though Officer Leist relied on information which was erroneously relayed to him by Officer Rehorst, he had the right to assume that probable cause was established and was legally justified in stopping the vehicle and being in the position where, when the door was opened, the sawed-off shotgun was revealed to him in plain view, illuminated by the car's interior lights and the lights of the squad car. No search took place.

*Wong Sun v. United States* (1963), 371 U. S. 471, 487, 488, 83 Sup. Ct. 407, 9 L. Ed. 2d 441, recognizes:

". . . that [not] all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality . . . .' "

In the instant case had there been a search in the constitutional sense—the opening of the trunk of the car or

the glove compartment or a removal of the car seats—there would have been an "exploitation" of the illegality, and such evidence could have been suppressed as the "fruit of the poisonous tree," but in the instant case the revelation of the sawed-off shotgun came not as a consequence of a search incident to the illegal arrest or the exploitation of the illegal arrest but rather as the result of the inadvertent discovery in plain view of the officer.

*Coolidge, supra,* also points out in footnote 27, page 471, that the issue dealt with therein involved a *"planned* warrantless seizure." That footnote states that a planned warrantless seizure on plain-view grounds would be "flatly inconsistent" with the fourth amendment. In this case we are dealing not with a planned warrantless seizure but with a completely unexpected and inadvertent one.

The *Coolidge* footnote emphasizes the good faith requirement necessary to support police conduct of the nature discussed herein. In this case Officer Rehorst misunderstood the radio dispatch. Nothing herein is intended to legitimate a police technique whereby a police officer would be induced to act on what he thought was evidence of probable cause when the directions to him were, by artifice, false or misleading. We decide only that, where a police officer, acting in good faith, reasonably believes that his directions from other officers direct an arrest, he may assume probable cause and may effect an apprehension. His reasonableness in so acting does not legitimatize the arrest in a legal sense or authorize any search incident thereto. It merely supplies a legal justification, insofar as we are concerned with the "plain view" situation, for him to be where he was at the time the object was perceived and seized.

The legality of the arrest itself is absolutely dependent upon evidence of probable cause and, in the absence of the state's assuming the burden of showing that probable cause was established at the time of the arrest, the arrest

is illegal and must be set aside. Setting aside of the arrest, however, under the limited circumstances considered here, does not vitiate the justification of the police officer to act on the basis of what he could assume to be true and does not vitiate a seizure conducted after a "plain view."

If the evidence showed that police authorities contrived to place an officer in the position where he would be induced by deceit to assume that he had a right to make an arrest, we would have no hesitation to set aside even a "plain view" search as an exploitation of a planned illegality.

Where a violation of the fourth amendment right against an unreasonable search and seizure is asserted, the burden of proof upon the motion to suppress is upon the state. *Vale v. Louisiana* (1970), 399 U. S. 30, 34, 90 Sup. Ct. 1969, 26 L. Ed. 2d 409; *United States v. Burhannon* (7th Cir. 1968), 388 Fed. 2d 961; *Leroux v. State* (1973), 58 Wis. 2d 671, 207 N. W. 2d 589. Where the state's defense is that an officer acted upon an erroneous report or failed to interpret properly a report or direction, the state bears a heavy burden. It is incumbent upon the state in such case to establish beyond a reasonable doubt its good faith. That good faith is in fact established here and is not questioned. Accordingly, although we find that the arrest was without probable cause and illegal, the police officer who made the apprehension acted reasonably under the circumstances and had a justification for being where he saw the sawed-off shotgun in plain view. The trial judge properly denied the motion to suppress.

The admission of the other items of evidence which the defendant sought to suppress rests upon the same rationale as that set forth above. Accordingly, the judgment of conviction was properly entered upon the guilty plea and the presentation of a prima facie case. The judgment in Circuit Court Case No. H–5601 is affirmed.

## II. Circuit Court Case No. H–4904.

In this case, after unsuccessful motions to suppress evidence, the defendant Taylor changed his plea to guilty, and upon that plea was found guilty of armed robbery and given a term of imprisonment in the Wisconsin State Prison not to exceed five years. The sentences in the cases on this appeal run concurrently.

The armed robbery in this case was of a dry cleaning establishment. A few minutes after the holdup, the defendant was apprehended by the police. He was identified as the robber at a lineup, and during the course of interrogation he made certain admissions. The defense moved to suppress the admissions because of an alleged failure to give complete *Miranda* warnings at and shortly after the time of the defendant's arrest. Specifically, the defendant claims that the evidence does not show that the defendant, upon his apprehension and before interrogation, was advised that, if he was without funds to hire a lawyer, one would be appointed for him. In all other respects he was advised of the right of counsel in conformance with *Miranda*. Accordingly, the conviction is attacked on the basis that the plea of guilty was induced in part by admissions given when the defendant was denied the right of counsel.

The additional claim is made that the defendant was identified in a lineup without being specifically told that he had the right to court-appointed counsel at the lineup. After motions to suppress evidence in regard to the admission and to suppress the lineup identification, the trial judge made the finding that the evidence was properly admissible.

In respect to the *Miranda* warnings, whether the proper instruction was given is a question of fact and the findings of the trial court will not be disturbed unless they are contrary to the great weight and clear preponderance of the evidence. At the hearing the police officer

testified that he advised the defendants they had a right to an attorney and that no statements need be made. He stated that the full and complete statement of defendant's constitutional rights were given him and stated that he advised the defendant "off of a card."

Moreover, in perusing the record, we find that, at the time the plea was changed from "not guilty" to "guilty," the defense counsel waived the state's presentation of a prima facie case and asked the court to incorporate by reference the material in evidence elicited at the preliminary hearing as well as at the hearing on the motions to suppress the evidence. Included in the transcript of the preliminary hearing, which was incorporated in the record of the prima facie trial, is the explicit statement of Officer William Hager that, in addition to all other *Miranda* warnings stated, he advised the defendant that "if he could not afford a lawyer, a court would appoint one for him."

We conclude that, from the motion to suppress itself, there would be ample evidence to support the trial judge's finding that proper *Miranda* warnings were given. When that evidence is coupled with the testimony in the preliminary examination, which at the request of the defendant's counsel was made a part of the record, there could be no doubt that the warning was properly given and that the admission made by the defendant was properly admitted into evidence.

Additionally, the defendant claims that he was not fully advised of his right to counsel at an identification lineup. The lineup occurred at the police station after arrest but prior to the filing of a complaint, information, or any other formal charge. Under the rule stated by this court in *Hayes v. State* (1970), 46 Wis. 2d 93, 175 N. W. 2d 625, under such circumstances, a defendant was entitled to counsel at the lineup in accordance with *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149, and *Gilbert v. California* (1967),

388 U. S. 263, 87 Sup. Ct. 1951, 18 L. Ed. 2d 1178. In *Hayes*, we adopted this particular exclusionary rule not because this court had made an independent judgment that counsel at a pre-indictment lineup was an essential attribute of ordered liberty in a critical stage of a criminal prosecution, but rather because we concluded that the mandate of the United States Supreme Court in *Wade* and *Gilbert* required appointment of counsel at any proceedings which had reached an accusatory stage whether or not testimonial utterances were involved. Subsequently, the United States Supreme Court in *Kirby v. Illinois* (1972), 406 U. S. 682, 689, 92 Sup. Ct. 1877, 32 L. Ed. 2d 411, has made clear that *Wade-Gilbert* only applies after a formal prosecution has been commenced "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

The United States Supreme Court in *Kirby* emphasizes that, unlike the basic doctrine of *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694, which is based upon the fifth and fourteenth amendment privileges against self-incrimination, the *Wade-Gilbert* exclusionary rule is based upon the specific right of counsel contained in the sixth and fourteenth amendments. Accordingly, the supreme court has now made clear in *Kirby* that the *Wade-Gilbert* standards are mandatory only in the situations delineated in *Kirby, i.e.,* only after the institution of formal charges. They are not mandatory because the process has reached an accusatory stage. It is, of course, within the power of this court to apply higher constitutional standards than those that are required of states by the federal constitution. *Lego v. Twomey* (1972), 404 U. S. 477, 489, 92 Sup. Ct. 619, 30 L. Ed. 2d 618; *State v. Wallace* (1973), 59 Wis. 2d 66, 79, 207 N. W. 2d 855; *McCauley v. Tropic*

*of Cancer* (1963), 20 Wis. 2d 134, 139, 121 N. W. 2d 545. In many instances the Wisconsin Supreme Court has afforded constitutional protections long before the United States Supreme Court has seen fit to make those standards mandatory upon the states. For example, the right to counsel at state expense was recognized by this court in *Carpenter v. County of Dane* (1859), 9 Wis. 249 (\*274), over a hundred years before *Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799, required the appointment of counsel as a constitutional right. The Wisconsin Supreme Court also saw fit to adopt the exclusionary rule in *Hoyer v. State* (1923), 180 Wis. 407, 415, 193 N. W. 89, many years before that rule was imposed upon the states by federal mandate in *Mapp v. Ohio* (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. 2d 1081. However, the rule adopted in *Hayes v. State* (1970), 46 Wis. 2d 93, 175 N. W. 2d 625, was not adopted because this court concluded that there was a felt need for the additional protection of an accused at a lineup. Rather, it was adopted because of what we then believed to be a requirement imposed on the states by the United States Supreme Court. We, accordingly, withdraw the language of *Hayes* which requires either the presence of counsel or an explicit waiver of counsel at a lineup prior to the institution of formal charges.

While the presence of counsel at a lineup prior to the institution of formal charges is not mandatory henceforth, we nevertheless believe it is good police practice and in the interest of justice to afford such counsel where practicable. As *Kirby v. Illinois, supra,* pages 690, 691, citing *Wade* pointed out:

". . . it is always necessary to 'scrutinize *any* pretrial confrontation . . . .' 388 U. S., at 227. The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification."

The presence of counsel at a lineup substantially reduces a subsequent challenge to the lineup identification. We encourage the continued use of counsel at all pretrial lineups to insure the preservation of evidence that may demonstrate that the lineups were held under constitutionally antiseptic circumstances.

We also emphasize that the formal commencement of a criminal prosecution cannot be constitutionally delayed, while a suspect is in custody, merely for the purpose of holding a lineup without the benefit of counsel. Under the rules heretofore adopted and enforced by this court, a prisoner once taken into custody must be promptly charged with the offense for which he is being held. *State v. Wallace* (1973), 59 Wis. 2d 66, 74–79, 207 N. W. 2d 855; *Reimers v. State* (1966), 31 Wis. 2d 457, 143 N. W. 2d 525, certiorari denied (1966), 385 U. S. 980, 87 Sup. Ct. 528, 17 L. Ed. 2d 442; *Mallory v. United States* (1957), 354 U. S. 449, 454, 455, 77 Sup. Ct. 1356, 1 L. Ed. 2d 1479.

We therefore conclude that since Taylor had been arrested but not charged by either a complaint or an information, he was not entitled, as a matter of constitutional right, to counsel at the lineup. No reason, other than the denial of counsel, has been urged for the suppression of the lineup identification. Since we find no error in the trial judge's decision on the motion to suppress evidence, the judgments finding the defendant guilty and imposing the sentence are affirmed.

*By the Court.*—Judgments in Circuit Court Case No. H–5601 and Case No. H–4904 are affirmed.