STATE, Respondent, v. MABRA, Appellant.

*No. State 92. Argued October 21, 1973.—Decided January 4, 1974.*
(Also reported in 213 N. W. 2d 545.)

614

For the appellant there was a supplemental brief by *Charles W. Mabra* of Waupun, pro se, a brief by *Harold B. Jackson, Jr.,* of Milwaukee, and oral argument by *Alvin E. Whitaker,* assistant state public defender.

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J. The appeal from the judgment of conviction comes too late. Although at the time of trial, sec. 958.13, Stats. 1967, was applicable to appeals and limited them to one year after the entry of judgment of conviction, this appeal comes twenty-three and one-half months thereafter. However, the appeal from the order denying a new trial is timely. While it has been said the

test on appeal of a denial of a new trial is whether there has been an abuse of judicial discretion, *State v. Simmons* (1973), 57 Wis. 2d 285, 289, 203 N. W. 2d 887; *State v. Wollmer* (1970), 46 Wis. 2d 334–336, 174 N. W. 2d 491; and *Babbitt v. State* (1964), 23 Wis. 2d 446, 452, 127 N. W. 2d 405, this view generally goes to the ground of the interest of justice. A judicial error is outside the rule of judicial discretion and the failure to recognize it is also in itself an error. In this case it makes no difference, as only a question of law is presented.

Pending this appeal, Mabra filed a motion claiming the trial transcript did not reflect an accurate account of the trial proceedings because it omitted questions, answers, and statements of defendant's counsel relating to (1) defendant's standing to challenge the admissibility of evidence, *i.e.*, money given to his wife earlier on the day of arrest and seized from her person after a search; (2) in-chamber conferences; and (3) matters relating to additional instructions given to the jury. Mabra claims those omissions go directly to his ability to contest the admissibility in evidence against him of the money taken from his wife. He requests an evidentiary hearing to reconstruct his testimony as he remembers it and other testimony at trial. This motion is denied; if it has any merit, it is moot, because this court in this opinion will reach the questions of law which he claims he raised at trial, *i.e.*, his standing to object to the admissibility of the money taken from his wife in a custodial search and the probable cause for the search of his wife at the scene of arrest and at the police station.

On April 14, 1970, about 1:30 o'clock in the afternoon, the Behling tavern in Milwaukee was held up by two masked and armed men, and approximately $1,900 in currency and $56 in coins were taken. Upon leaving the tavern, the shorter of the two men (later identified as Mabra at the trial) shot and killed a patron Mr. Wahl. After the shooting, one of the tavern patrons called the

police. Edward Mulqueen, an electrician working across the street from the tavern, also called the police and requested an ambulance. He saw two Negro males exit from the tavern, the second man leaving immediately after Mulqueen heard a shot. These two men were observed getting into a Cadillac with a white top and blue bottom, which had pulled up in front of the tavern. Mulqueen jotted down the license plate number on the Cadillac. A police officer with the West Allis police department had seen the Cadillac with such a license plate occupied by three Negro males in the area of the robbery and murder just prior to the time of the commission of the crime.

Shortly after receiving the license plate number, police located Odis Williams, the owner of the Cadillac and brother of Mabra's wife, at his place of employment, who told them his sister had borrowed his car earlier in the day and had not yet returned it. About one and one-half hours after the robbery, the Cadillac was found parked in the 500 block of North 33d Street in Milwaukee and it was towed to the Safety Building. A search revealed a panty-hose stocking knotted at one end, which fit the description of the mask worn by one of the robbers, and a blue navy watch cap, which also fit the description of a hat worn by one of the robbers. The police learned the identity of Mabra's car and put out a dispatch report over the police radio to arrest the occupants of a late model two-door light-blue Pontiac Firebird with a black vinyl top, having license plate number B72978 on the ground the occupants were wanted for armed robbery and murder.

In response to the radio bulletin, at about 5:30 p.m., the policemen spotted and stopped the Mabra auto at North 3d and Garfield Avenue in Milwaukee. They arrested Mabra and his wife for armed robbery and murder. A "pat down" weapons search was made of Mabra and both were taken to the police station. At the police station, a custodial search of Mrs. Mabra disclosed $40.20

in her handbag ($16 in one dollar bills; 100 dimes; 73 nickles; 41 quarters) and $593 in currency and $1 in coins were found in an eyeglass case in her bra.

At trial, there was some question whether both the issue of the lawfulness of the search of Mrs. Mabra and the standing of Mabra to raise the question of an unreasonable search of his wife were raised. On this appeal, we take the view that both questions are before us. While Mrs. Mabra was arrested for the crime of armed robbery and murder, she was not charged with the crimes. The trial court held Mabra had no standing to suppress evidence or object to the admission of evidence taken from another person, namely, his wife. Mabra does not question the generally accepted view that the fourth amendment's constitutional protection extends only to those persons whose rights have been violated by an illegal search and seizure but submits that "the mere intrusion by arresting officers into the automobile which he occupied with his wife gave him standing to contest the legality of the seizure of money from her." Pro se brief of Mabra, page 1. However, the search of Mrs. Mabra was not in the automobile or at the location of the arrest but at the police station and any argument based on the intrusion of his presence must be based on the extension of that concept to the police station.

In justifying the search of Mrs. Mabra at the police station, the state based it on "proximity" and we take this to mean the relationship both physically in the car and apparently with the crime. Consequently, Mabra argues the search of his wife was directed at getting evidence against him and the search of her was incidental to his arrest and thus a violation of his fourth amendment right; and alternatively, any search in the car was in his presence and carried over to the police station and this gives him standing to object.

The courts have wavered on the scope and rationale of standing to raise the unlawfulness of a search and

seizure. In *Jones v. United States* (1960), 362 U. S. 257, 80 Sup. Ct. 725, 4 L. Ed. 2d 697, the United States Supreme Court took the view that "to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of the evidence gathered as a consequence of a search or seizure directed at someone else."

This view of standing was based on the theory that a search and seizure must be an invasion of a person's personal right of privacy rather than on the older trespass theory or local theory. Privacy rested upon ownership, possession or a substantial interest in the property seized. This, of course, created an inescapable self-incrimination dilemma in those cases where mere possession was an essential element of the crime. To overcome this, the court granted "automatic" standing when the defendant was legitimately on the premises and when the search took place in cases where possession was an essential element of the offense. This holding was reaffirmed in *Simmons v. United States* (1968), 390 U. S. 377, 88 Sup. Ct. 967, 19 L. Ed. 2d 1247. In *Alderman v. United States* (1969), 394 U. S. 165, 89 Sup. Ct. 961, 22 L. Ed. 2d 176, the court rejected the argument that the police deterrent rationale for the exclusionary rule (*see Linkletter v. Walker* (1965), 381 U. S. 618, 85 Sup. Ct. 1731, 14 L. Ed. 2d 601) logically required the abrogation of the standing requirement and the formulation of a rule which would allow a defendant to object to the admissibility against him of any unconstitutionally seized evidence.[1] The court adhered to the doctrine that fourth amendment rights were personal and could not be vicari-

---

[1] This question had been recognized but left unanswered in a footnote in *Simmons v. United States, supra*, n. 12, at page 390.

ously asserted. The standing requirement since has been upheld in *Combs v. United States* (1972), 408 U. S. 224, 92 Sup. Ct. 2284, 33 L. Ed. 2d 308, and *Brown v. United States* (1973), 411 U. S. 223, 93 Sup. Ct. 1565, 36 L. Ed. 2d 208, and by many lower federal courts.[2] Recently this court has reviewed another aspect of "standing" in *State v. Christel,* ante, p. 143, 211 N. W. 2d 801; *see also: Hayes v. State* (1968), 39 Wis. 2d 125, 158 N. W. 2d 545.

California is the only jurisdiction which recognizes that the exclusionary rule rationale applies to all defendants, thus permitting each defendant to object to evidence obtained in violation of another's fourth amendment rights. *People v. Martin* (1955), 45 Cal. 2d 755, 290 Pac. 2d 855; *People v. Sneed* (1973), 32 Cal. App. 3d 535, 108 Cal. Rptr. 146. New York has accomplished the same result by statute. *See* New York Code of Criminal Procedure, sec. 813–c (McKinney Supp. 1971). This code provides that any person having reasonable grounds to believe the product of a search may be used

---

[2] Suppression of the product of a fourth amendment violation can be urged only by one whose own rights have been infringed by the search. *See, e.g., United States v. Banks* (5th Cir. 1972), 465 Fed. 2d 1235, certiorari denied (1972), 409 U. S. 1062, 93 Sup. Ct. 568, 34 L. Ed. 2d 514; *United States v. Carrion* (9th Cir. 1972), 463 Fed. 2d 704; *Gollaher v. United States* (9th Cir. 1969), 419 Fed. 2d 520; *Parker v. United States* (9th Cir. 1969), 407 Fed. 2d 540; *United States v. Deegan* (2d Cir. 1969), 410 Fed. 2d 13; *United States v. Cowan* (2d Cir. 1968), 396 Fed. 2d 83; *United States v. Mancusi* (2d Cir. 1967), 379 Fed. 2d 897, affirmed, 392 U. S. 364, 88 Sup. Ct. 2120, 20 L. Ed. 2d 1154; *Bryson v. United States* (D. C. Cir. 1969), 419 Fed. 2d 695; *Parman v. United States* (D. C. Cir. 1968), 399 Fed. 2d 559; *United States v. Goad* (10th Cir. 1970), 426 Fed. 2d 86; *Sumrall v. United States* (10th Cir. 1967), 382 Fed. 2d 651; *United States v. Konigsberg* (3d Cir. 1964), 336 Fed. 2d 844; *United States v. Hopps* (4th Cir. 1964), 331 Fed. 2d 332; *United States v. Holmes* (7th Cir. 1971), 452 Fed. 2d 249. *See also: United States v. Berryhill* (9th Cir. 1971), 445 Fed. 2d 1189.

as evidence against him has standing to challenge the search. *People v. Smith* (1962), 35 Misc. 2d 533, 230 N. Y. Supp. 2d 894. The state of Oregon has proposed the adoption of such a rule. Oregon Criminal Law Revision Commission, Part II, Pre-Arraignment Provisions, Art. 5, Search and Seizure, Preliminary Draft, No. 3, May, 1972, sec. 40 (1). Many commentators have recommended that the standing requirement be abolished because it is inconsistent with the avowed intent of the exclusionary rule to deter illegal police practices.[3]

The most cogent support for modifying the rule of standing is the Model Code of Pre-Arraignment Procedure, Official Draft No. 1, recommended by the American Law Institute on July 15, 1972.[4] It might well be that a

[3] *See, e.g.,* White and Greenspan, *Standing To Object To Search And Seizure,* 118 U. Pa. L. Rev. (1970), 333, 334; J. Laudynski, *Search And Seizure And The Supreme Court* (1966), 73–77; Grove, *Suppression of Illegally Obtained Evidence: The Standing Requirement On Its Last Leg,* 18 Catholic U. L. Rev. (1968), 150; Comment, *Standing To Object To an Unreasonable Search And Seizure,* 34 U. Chi. L. Rev. (1967), 342; Note, *Search and Seizure: Admissibility of Illegally Acquired Evidence Against Third Parties,* 66 Colum. L. Rev. (1966), 400; *Standing to Object to an Unlawful Search and Seizure,* 1965 Wash. U. L. Q. 488; 3 Wright, *Federal Practice and Procedure, Criminal,* n. 71, sec. 674.

[4] Art. 290, sec. SS 290.1 (5) thereof provides:

"A motion to suppress may be made by any defendant against whom things seized are to be offered in evidence at a criminal trial, if such things were obtained by a search of or seizure from

"(a) the defendant; or

"(b) a spouse, parent, child, brother, or sister of the defendant, or any member of his household; or

"(c) any person with whom the defendant resides or sojourns; or

"(d) a co-defendant, co-conspirator, or any person chargeable with the same crime with which the defendant is charged; or

"(e) any person with whom the defendant conducts a business; or

"(f) any other person if, from the circumstances, it appears that the search or seizure was intended to evade the application

defendant on the constitutional grounds of due process and the basic concept of a fair trial could argue that he had a constitutional right to object to any evidence illegally seized from any one being used against him although such search and seizure did not violate his personal fourth amendment right. However, Mabra does not squarely raise this question but rather a more limited question of whether the scope of his fourth amendment right includes his freedom from a search and seizure made in his presence of his wife for evidence to be used directly or indirectly against him. In this argument, he attempts to come under the doctrine of *Jones v. United States, supra,* as a victim.

We think, under the *Jones Case,* Mabra has standing to raise the question of the legality of the search of his wife. They were in each other's presence in the automobile when arrested for the same crime. A search of her person at that time would have been at a place where Mabra had a legitimate right to be and the object of the search incident to the arrest for robbery could only be for weapons and incriminating evidence against him as well as his wife. This situation colored and carried over

of this [section] to any of the persons described in paragraphs (a) to (e) inclusive."

The commentary to this section explains that:

"The *Jones* and *Alderman* cases settle the point that, at the constitutional level, the right to raise Fourth Amendment claims can be limited to those whose own Fourth Amendment rights have been invaded. On the policy level, the Reporters were persuaded to the views expressed by Judge Traynor in the *Martin* case. The problem of standing has been a vexing one conceptually, productive of aridly technical discussion and decision. In the sense of 'case or controversy,' certainly the accused has standing to object to the use of evidence which may send him to jail, and which was obtained by unlawful means. The logic of the exclusionary rule, and the deterrence objectives on which it is based, apply equally whether or not the search itself 'aggrieved' the defendant." ALI, Model Code of Pre-Arraignment Procedure, *supra,* p. 217.

into the custodial search of Mrs. Mabra at the police station which, while not incidental to the arrest, was founded upon it and the basis for taking her into custody which required a custodial search before incarcerating her.

The purpose of a custody search at the station was not for evidence but for the security of the police, of Mrs. Mabra, the safe-keeping of her personal articles and the security of fellow prisoners. Such a search and the listing of property protects the police against false claims of property taken from a person incarcerated and not returned to him. *State v. Stevens* (1965), 26 Wis. 2d 451, 132 N. W. 2d 502; *Warrix v. State* (1971), 50 Wis. 2d 368, 184 N. W. 2d 189. However, evidence discovered in such a search is admissible at trial. *State v. Stevens, supra.* In *Stevens,* we stated that when an article properly comes into an officer's possession in the course of a lawful search, it would be entirely without reason to say he must return it because it was not one of the things it was his business to look for. *See also: Warrix v. State, supra.* This rule is similar to the new rule allowing any evidence to be admitted at trial which is seized in a search after a valid arrest, either with or without a warrant. Given a valid arrest, a search is not limited to weapons or evidence of a crime, nor does the search need to be directed to or related to the purpose of the arrest. A person lawfully arrested for a traffic violation or minor infraction of a criminal law may be searched without a search warrant or probable cause and if the search turns up incriminating evidence of a more serious crime, it may be used against the person. *United States v. Robinson* (1973), 94 Sup. Ct. 467, 38 L. Ed. 2d 427, and *Gustafson v. Florida* (1973), 94 Sup. Ct. 488, 38 L. Ed. 2d 456.[5] Thus one who has

---

[5] *Robinson* and *Gustafson* both involved the issue of the legitimacy of a thorough search of the person of an arrestee at the scene of the arrest incident to a lawful custodial arrest. In *Robinson,*

contraband or evidence of crime on him travels at his
own risk when he is validly arrested for any reason. The
reasonableness of the search no longer depends on the

the police effected a full custody arrest of the defendant for op-
erating a motor vehicle after revocation of his operator's permit.
A thorough-going, full field-type search of the person of the ar-
restee turned up 14 gelatin capsules of heroin in a crumpled up
cigarette package. The heroin was subsequently admitted in evi-
dence against the defendant in a prosecution for possession of
heroin. In *Gustafson* the defendant was placed under custodial
arrest for failure to have his vehicle operator's license in his
possession. A search of defendant's coat pocket turned up a
cigarette package containing marijuana and this was subsequently
admitted in evidence against defendant in a prosecution for pos-
session of marijuana. The court's opinion in *Robinson* controlled
the disposition in *Gustafson,* so hereinafter discussion will focus
on *Robinson.*

The court first indicated that the limitations placed by *Terry
v. Ohio* (1968), 392 U. S. 1, 88 Sup. Ct. 1868, 20 L. Ed. 2d 889,
on protective searches conducted in an investigatory stop situation
based on less than probable cause (the so-called stop-and-frisk
situation) are not to be carried over to searches made incident
to lawful custodial arrests.

"The justification or reason for the authority to search incident
to a lawful arrest rests quite as much on the need to disarm the
suspect in order to take him into custody as it does on the need
to preserve evidence on his person for later use at trial. *Agnello
v. United States, supra; Abel v. United States,* 362 U. S. 217
(1960). The standards traditionally governing a search incident
to lawful arrest are not, therefore, commuted to the stricter *Terry*
standards by the absence of probable fruits or further evidence
of the particular crime for which the arrest is made." *United
States v. Robinson, supra* (94 Sup. Ct. at 476).

Consequently, it must be understood that these decisions have
not changed the law regarding the permissible scope of a search
conducted in an investigatory stop or stop-and frisk situation.
The court expressly limited its holding to a search of an arrestee's
person made incident to and at the scene of a lawful custodial
arrest.

"A police officer's determination as to how and where to search
the person of a suspect whom he has arrested is necessarily a
quick *ad hoc* judgment which the Fourth Amendment does not

purpose of the search in relation to the object of the arrest. Our prior decisions requiring a reasonable search to be directed to the object or purpose of the arrest are no longer viable. *See, e.g., Barnes v. State* (1964), 25 Wis. 2d 116, 130 N. W. 2d 264, noted in the dissenting opinion of Mr. Justice MARSHALL in *Robinson* as authority contrary to the majority opinion. *United States v. Robinson, supra,* 94 Sup. Ct. 477 (MARSHALL, J., dissenting).

Thus the question is reached whether the arrest of the Mabras was valid. Mabra contends the arresting officer must personally have in his mind knowledge sufficient to establish probable cause for the arrest. This is an incorrect view of the law. The arresting officer may rely on all the collective information in the police department. Of course, it must be later established that probable cause in fact existed at the time of the arrest but that probable cause need not exist in the arresting officer at the time of the arrest. The police force is considered as a unit and where there is police-channel communication to the arresting officer and he acts in good faith thereon, the arrest is based on probable cause

require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *United States v. Robinson, supra* (94 Sup. Ct. at 477).

when such facts exist within the police department. *Whiteley v. Warden* (1971), 401 U. S. 560, 91 Sup. Ct. 1031, 28 L. Ed. 2d 306; *United States v. Stratton* (8th Cir. 1972), 453 Fed. 2d 36. This principle has been adequately explained recently by this court in *State v. Taylor* (1973), 60 Wis. 2d 506, 210 N. W. 2d 873, and in *State v. Klein* (1964), 25 Wis. 2d 394, 130 N. W. 2d 816; *see also: United States v. Canieso* (2d Cir. 1972), 470 Fed. 2d 1224. What amounts to probable cause was exhaustively treated in our recent decision in *Leroux v. State* (1973), 58 Wis. 2d 671, 681, 686, 207 N. W. 2d 589.

We think the facts known to the police were sufficient to establish probable cause. The Cadillac was seen near the scene of the crime with three black men shortly before the time of the robbery. Two black men were seen coming out of the tavern, getting into the Cadillac after a shot was fired. The Cadillac was borrowed from Mrs. Mabra's brother prior to the time of the crime and had not been returned and was later found parked on a street, abandoned. A mask and cap were found in the car. While it is true Mabra was driving his own car with his wife, it is not unusual for robbers to switch from the getaway auto to an unidentified car. It would be natural for Mabra to drive his own car, as any other owner would drive his own car, so as not to arouse suspicion and lose the identity of the Cadillac. These facts and reasonable deductions by the police were sufficient to constitute probable cause in the mind of a reasonable policeman that anyone in Mabra's car was connected with the crime. We hold the arrest of both Mabra and Mrs. Mabra was valid; her arrest being valid, the evidence obtained in the custody search at the police station was admissible in evidence.

Mabra raises the question of the sufficiency of the complaint because it fails to set forth why he is being

charged with the crime. The five required elements of a criminal complaint were laid down in *State ex rel. Evanow v. Seraphim* (1968), 40 Wis. 2d 223, 226, 161 N. W. 2d 369; *see also: State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 173 N. W. 2d 175; *State ex rel. Pflanz v. County Court* (1967), 36 Wis. 2d 550, 557, 153 N. W. 2d 559. The complaint in this case details sufficiently all the facts to establish probable cause. To identify one for probable cause for arrest, it is not necessary to have an eyewitness make the complaint. There is no merit to this contention of Mabra.

*By the Court.*—The motion to correct the transcript is denied and the judgment of conviction and the order denying a new trial are affirmed.