**UNITED STATES of America,
Plaintiff,**

**v.**

**Alice Marie HOFFMAN, also known as Vicki Marie Johnson, Holsey Merritt Johnson, and Thomas Person Fears, also known as Thomas Preston Fears, also known as Thomas Johnson, Defendants.**

**No. CR–65–36.**

United States District Court
W. D. Wisconsin.

March 12, 1966.

Edmund A. Nix, U. S. Atty., Madison, Wis., for plaintiff.

Newton S. Friedman, Duluth, Minn., for defendants.

JAMES E. DOYLE, District Judge.

Defendant Alice Hoffman is charged in an amended information, in four counts: (1) with conspiring from December 1 through 14, 1964, with one Thomas Person Fears and with defendant Johnson unlawfully, wilfully and knowingly and with unlawful intent to cause to be transported in interstate commerce falsely made, forged, altered and counterfeited securities knowing the same to have been falsely made, forged, altered and counterfeited, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2314; (2) with causing a certain such security to be transported from Onalaska, Wisconsin, to St. Paul, Minnesota, on December 3, 1964; (3) with causing another such security to be transported from La Crosse, Wisconsin, to St. Paul, on December 3, 1964; and (4) with causing another such security to be transported from Superior, Wisconsin, to St. Paul on December 9, 1964.

Defendant Johnson is charged in an amended information, in three counts: (1) with the conspiracy described in the first count of the Alice Hoffman information; (2) with aiding and abetting Alice Hoffman, from December 1, 1964, through December 14, 1964, in the offenses by her, described in the first count, in violation of 18 U.S.C. § 2; and (3) with receiving, relieving, comforting, and assisting Alice Hoffman, from December 1, 1964, through December 14, 1964, with intent thereby to prevent her apprehension for trial for the offenses by her, described in the first count, in violation of 18 U.S.C. § 3.

Fears has heretofore been adjudged guilty on his plea of guilty to the charges against him in this action. References hereinafter to "the defendants" are to defendant Hoffman and defendant Johnson.

Both defendants have moved for the return to them of certain listed property which they allege to have been improperly seized and taken from them, and for the suppression of such property as evidence against them in any criminal proceedings; it is alleged that the defendants were illegally arrested and imprisoned and that the property was seized against their will and without a search warrant. They move, further, that all other evidence obtained and taken to date from their possession, or information obtained by conversations with the defendants, and all identifications made, be suppressed. Finally, they move that because of the illegal arrest and detention "and other illegal actions of the authorities", the actions against both defendants be dismissed.

A hearing has been held on the motion, testimony has been taken and documentary evidence received, briefs filed, and the court is advised in the premises.

The defendants were arrested by officers of the police department of the City of Superior, Wisconsin, without a warrant, at about 1:00 p. m. on Friday, December 11, 1964, in the City of Superior. At the scene of the arrest, the defendant Johnson was searched, and certain articles were taken from both defendants. A few minutes later, at the police station, they were both thoroughly searched and other articles were taken from them. Also at the police station, they were booked in the usual manner.

There is no evidence that any charge was made against either of them on any record until Monday, December 14, when a complaint was filed in the Douglas County Court (in which the City of Superior is situated), charging Alice Hoffman with receiving and concealing a stolen money order, in violation of a Wisconsin criminal statute.

Later on Monday, December 14, defendant Alice Hoffman was also complained against, before a United States Commissioner in Superior, by an agent of the Federal Bureau of Investigation, who charged her, in two counts, with causing to be transported in interstate commerce two falsely made "Universal Company" commercial money orders; the offenses were alleged to have been committed at La Crosse, Wisconsin, on or

about December 3, 1964. On December 14, a warrant for the arrest of Alice Hoffman was issued by the Commissioner, the warrant was executed forthwith, a hearing was held before the Commissioner at about 6:15 p. m. at which bail was set, and she was committed to the Douglas County jail.

On Tuesday, December 15, defendants Alice Hoffman and Johnson, as well as Fears, were complained against, before a United States Commissioner in Superior, by an agent of the Federal Bureau of Investigation, who charged them with a conspiracy to negotiate certain falsely made commercial money orders of the Universal Company. A warrant for the arrest of defendants Alice Hoffman and Johnson, and also Fears, was issued by the Commissioner on December 15, the warrant was executed forthwith, a hearing was held before the Commissioner at about 11:45 a. m. at which bail was set, and the three were committed to the Douglas County jail.

From the time of her arrest on Friday, December 11, until the time of her appearance in Douglas County Court on Monday, December 14, the defendant Alice Hoffman was held in the city jail. From the time of their arrest until their appearance before the United States Commissioner on Tuesday, December 15, the defendant Johnson and Fears were held in the city jail.

The central issue raised by defendants' motion is whether the arrest, without warrant, was lawful. This turns upon whether there was "probable cause" for the arrest at the time it was made. In United States v. Walker, 246 F.2d 519 (C.A.7th, 1957), the Court of Appeals undertook a comprehensive review of the anthorities. It held that the arrest there involved was lawful, but in arriving at that decision it re-stated the principles and standards to be applied in making such a determination. Since *Walker*, the Supreme Court of the United States has continued to deal with the competing factors to be balanced, notably in Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), and Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). From the discussion in these leading cases, certain guidelines emerge:

" * * * [A]n arrest without a warrant on bare suspicion unsupported by reasonable grounds is illegal. 'Probable cause' and 'reasonable grounds' are concepts having virtually the same meaning." *Walker*, 246 F.2d, at 519.

"The requirement of probable cause has roots that are deep in our history. * * * And as the early American decisions both before and immediately after its adoption [the Fourth Amendment] show, common rumor or report, suspicion, or even 'strong reason to suspect' was not adequate to support a warrant for arrest. And that principle has survived to this day. * * * Evidence required to establish guilt is not necessary. * * * On the other hand, good faith on the part of the arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. * * * It is important, we think, that this requirement be strictly enforced, for the standard set by the Constitution protects both the officer and the citizen." *Henry*, 361 U.S., at 100–102, 80 S.Ct., at 170.

"It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion * * *, though the arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause—evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed, Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543—must be measured by the facts of the particular case. * * * Whether or not the requirements of reliability and particularity of the information on which an officer may act are more stringent where an arrest warrant is absent, they surely

cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principal incentive now existing for the procurement of arrest warrants would be destroyed. The threshold question * * * is whether the officers could, on the information which impelled them to act, have procured a warrant for the arrest * * *." *Wong Sun*, 371 U.S., at 479–480, 83 S.Ct., at 413.

" 'Reasonable ground,' then, is the litmus paper for testing validity of arrests without a warrant. Implicit in such test is the exclusion of arbitrary and capricious interference with individual freedom. Dignity and sanctity of the individual are not to be jeopardized by the whim or zeal of policemen. Consequently organic law, reflected in the relevant statutes and Rules of Criminal Procedure interposes the judiciary between law enforcement officers and citizens by requiring, as normal procedure, application for warrants and the attendant opportunity for the judicial branch to pass on the question of probable cause." *Walker*, 246 F.2d, at 527–528.

We turn to the facts here. Viewed most favorably to the government, the evidence permits the conclusion that at the time of the arrest, the Superior city police possessed the following information (the court does not presently pass upon the accuracy of this information, but considers it only in the light of whether it would "warrant a man of reasonable caution in the belief" that a felony had been committed, Carroll v. United States, 267 U.S., at 162, 45 S.Ct., at 288):

The owner of a motel in Superior, and his wife, had reported to the police on December 11, 1964, sometime between about 11:10 a. m. and 11:20 a. m. that at about 5:00 a. m. on December 8, 1964, they had rented a room to the defendant Johnson, who is a Negro, and to the defendant Alice Hoffman, who is white, registering as Mr. and Mrs. Jackson, 1801½ No. 25 Ave., Kansas City, Kansas. They were driving a Chevrolet with Minnesota license plates. The following morning they told the motel operator that they were entertainers on their way to Canada for an engagement. On December 10 a second room was rented to a Negro man, presumably Fears, who signed as "Harold Thomas, Detroit," and who stayed in this room "that evening" with defendant Alice Hoffman. Defendant Alice Hoffman and a "blonde lady" "came and went several times during the day," between December 8 and 11, but the defendant Johnson and Fears stayed in their rooms and requested that meals be sent in to them. Meals were sent in three, four, or five times during their stay. The "blonde lady" left the motel "about a day before the other folks."

Very shortly after 11:00 a. m. on Friday, December 11, the defendant Johnson checked out, paying in full, and he, defendant Alice Hoffman, and Fears, departed in their car, heading east, toward downtown Superior. The motel operators went to one of the two units, specifically the unit occupied by defendant Johnson, to clean it, and found in the desk drawer three money orders and an envelope.

Each of these three money orders bore the printed insignia of Travelers Express Company, and the printed heading "Bondified Money Order." After the printed word "from," each bore the handwritten name "Mrs. S. Johnson". After the printed word "address," each bore in handwriting: "417 E. 23rd St., Mpls, Minn." After the printed words "Pay to the order of," each bore the handwritten words: "Vickie Marie Johnson." After the printed word "Amount," each bore the machine-applied words and figures: "The Sum 73 Dols 98 Cts." Blanks on each at the bottom had been filled in by hand to read: "25 No. 196". What appears to be a facsimile of the signature of the treasurer of Travelers Express Company was printed on each money order, as well as the words "First National Bank, Hudson, Wisconsin". A printed set of numbers, such as are used for automated processing of checks and money orders, appears at the bottom of each

money order. Finally, in handwriting, at the lower right hand corner of each money order was the name: "Addie Baleom". The money orders were numbered 20 3838476, 20 3838479, and 20 3838480.

The plain, letter size, 4 inch by 9½ inch envelope bore various notations in pencil and pen, mostly figures, which might have significance in several respects. Most noticeable was a column of six "7398's," which had been totalled as "44388"; the "44388" had been added to "510.00," which in turn had been arrived at by multiplying "8500" by "6", for a product of "510.00".

The motel operator called the chief of police, explained the situation, and described the envelope and money orders, the individuals, their dress, and their automobile. Within three or four or five minutes, a police officer appeared at the motel. The motel operators gave him all the above information, and handed him the three money orders and the envelope. The police officer returned to the station at about 11:30 a. m. to 11:40 a. m., and conveyed this information to the chief. The chief put in a phone call to Hudson, Wisconsin. In reviewing the record, the court concludes that there is no competent testimony as to what the chief may have learned from this phone call; the chief did not testify.

At about 1:00 p. m., Fears returned to the motel, on foot, and asked the wife of the operator whether they "had found anything in the room, anything in the desk drawer, any money orders or anything." She and her husband told Fears that nothing of that kind had been found. Fears left on foot, walking at least three blocks. The motel operator told his wife to call the police and describe Fears' location. She did, a broadcast was made to the police cars, and the arrest followed almost immediately.

 The arrests made at about 1:00 p. m., December 11, were made by the City of Superior police department, not by federal officers. It is not clear, since no state charges were ever filed against defendant Johnson or against Fears, and since a state charge was not filed against defendant Alice Hoffman until three days later, whether the arrests purported to be based upon the commission of a state offense or a federal offense. No federal statute appears to regulate the manner of arrest in such a situation. Under these circumstances, it appears that the validity of the arrests without warrant is to be determined by the law of Wisconsin, subject to such minimum standards as the Supreme Court of the United States may rule are required by the Constitution of the United States. Burks v. United States, 287 F.2d 117, 121–122 (C.A.9th, 1961), cert. den., 369 U.S. 841, 82 S.Ct. 868, 7 L.Ed.2d 846, rehearing den., 369 U.S. 882, 82 S.Ct. 1143, 8 L.Ed. 2d 284. See United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Wisconsin statutes, Secs. 954.03 and 62.09(13) (a), do not define the standard for determining the lawfulness of an arrest without warrant for a felony; we specify a felony because it was with a state felony (Wis.Stats., Sec. 943.34(2)) that defendant Alice Hoffman was ultimately charged, and because it was with a federal felony that the defendants Alice Hoffman and Johnson, and Fears, were ultimately charged. However, it seems clear that the law of Wisconsin with respect to arrests without warrant for felony is indistinguishable from the federal constitutional standards enunciated by the Supreme Court of the United States. This appears to be the holding of Browne v. State, 24 Wis.2d 491, 502–509, 129 N.W. 2d 175, 131 N.W.2d 169 (1964), in which approving reference is made to the standards enunciated in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 2d 134 (1959), and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). There is a suggestion in Browne v. State, 24 Wis.2d, at 503, footnote 5, 129 N.W.2d 175, 131 N.W.2d 169, that the state standards may occasionally be more restrictive of police conduct than those of the Fourth and Fourteenth Amendments to the United States Constitution.

██ Therefore, we apply to these arrests the standards set forth in the passages quoted in the early portion of this opinion, exemplified by the summary stated in Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168 (1959): "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." Construing the term "the offense" liberally, and thus favorably to the government's position in the present case, we hold that "the offense" must have been generally related to illegal trafficking in stolen or forged commercial instruments. The government does not appear to contend that "the offense" was of a distinctly different order, such as a sex offense. Even if it did so contend, we would be constrained to hold, in the present circumstances at least, that at the time of the arrest, the probable cause must bear a direct relationship to the state offense with which defendant Alice Hoffman was ultimately charged, and to the federal offenses with which the defendants Alice Hoffman and Johnson, and Fears, were ultimately charged.

 We conclude that as of about 1:00 p. m., December 11, 1964, the facts and circumstances known to the Superior police department, as developed at the hearing on defendants' motion, would not warrant a prudent man in believing that these two defendants and Fears were trafficking in stolen or forged commercial instruments. The required "probable cause" did not exist. Obviously, putting aside for the moment the appearance of the three money order forms and the notations on the envelope, the circumstances here might well have aroused suspicions that the identity of the guests of the motel was not as they represented it, that their occupation was not as they represented it, that their marital relationships were not as they represented them, possibly that their destination was not as they represented it, and that the defendant Johnson and Fears were not eager to be seen in public places. But suspicions are clearly insufficient to justify arrest without warrant, and this is doubly true when the suspicions are as vague and directionless as they must have been here.

██ The critical question is whether the formless suspicions just referred to, when coupled with the appearance of the three money orders and with the notations on the envelope and with Fears' return to the motel and inquiry there, combine to furnish probable cause. To answer this question is difficult. Fears' return and inquiry was probably sufficient to link the three money orders and the envelope to him, Alice Hoffman, and Johnson, rather than to some earlier occupants of the motel room in the drawer of which they were discovered. But such a return and inquiry is quite consistent with the conduct of law-abiding citizens who might have left valuables behind. Therefore the entire issue turns upon the appearance of the three money orders and the notations on the envelope. This appearance and these notations might well arouse the suspicions of a prudent man. We cannot conclude that they would warrant the prudent man in believing that the three had been trafficking in stolen or forged commercial instruments.

██ Except for Fears' return and inquiry, all of the circumstances recited above were known to the Superior police by about 11:30 a. m. As the Court of Appeals for this Circuit emphasized in *Walker*, 246 F.2d 519, 528, the "organic law * * * interposes the judiciary between law enforcement officers and citizens by requiring, as normal procedure, application for warrants and the attendant opportunity for the judicial branch to pass on the question of probable cause." There was opportunity to apply to a magistrate for a warrant and to permit a judicial evaluation of the asserted probable cause. Fears' return and inquiry, in our view, did not significantly add to the basis for probable cause. At most, it provided a physical opportunity for an arrest for which the way could by then have been prepared, had the magistrate been persuaded that

probable cause existed. Short-cuts designed to avoid this initial judicial evaluation are not to be permitted. The requirement is intended to be burdensome. Exceptions to it are to be permitted sparingly.

▆▆▆ It is well settled that if the arrest without warrant is unlawful, and if, as here, the search and seizure are intimately related to the arrest, then the search and seizure are unreasonable and violative of the Fourth Amendment. United States v. Walker, 246 F.2d 519, 526 (C.A.7th, 1957).

We hold that the defendants' motion must be granted to the following extent: There must be returned to the defendants all items taken from them at the scene of the arrest, at the police station, and at the city jail. This includes but is not limited to: the money taken from them; the weapons taken from defendant Johnson; the money orders taken from the person of defendant Alice Hoffman; the driver's license taken from the defendant Alice Hoffman; the purse and its contents taken from the defendant Hoffman. It is further ordered that none of the said items of property may be used against either of the defendants in this criminal proceeding.

As indicated, defendants' motion also seeks the return of the three money orders and the envelope obtained by the police from the motel operators, and the suppression of these items as evidence. This portion of the motion is denied. The unlawful arrest and search and seizure which occurred shortly after 1:00 p. m. has no logical or legal connection with the manner in which the police obtained the three money orders and envelope at about 11:30 a. m.

In the motion, at the hearing on the motion, and in briefs, counsel for the defendants places heavy emphasis upon the circumstances of the defendants' detention following their unlawful arrest. It is not controverted that the defendant Alice Hoffman was held, without charges, for about 69 hours, and that the defendant Johnson and Fears were held, without charges, for about 93 hours, all in the city jail. The city jail is obviously inappropriate for such extended detention. The firm testimony of the defendants, as contrasted with the general, vague, and occasionally evasive testimony of representatives of the Superior Police Department, compels the conclusion that the basic requirements of the prisoners, for food and otherwise, were met most casually. It appears that no affirmative inquiry as to the needs of defendant Alice Hoffman, as a female prisoner, were made at any time. Although the police denied that the defendants had ever requested counsel, there was emphatic corroboration of the testimony of defendant Alice Hoffman that she obtained counsel only by getting word out through a newsboy who happened by her cell.

It is a dismal account of failure to accord respect to the dignity of every human being. However, there is no basis for judicial intervention, at this point in the proceeding. That is, there is no showing that the government proposes to offer as evidence any written or oral statements, or any physical evidence, which may have been obtained from any of the three prisoners during this period of confinement. If and when such an effort is made, the issues raised by the circumstances of the confinement can be dealt with.

▆▆▆ The defendants' motion further prays that because of the unlawful arrest, the unlawful search and seizure, the allegedly unlawful treatment of the prisoners, "and other illegal actions of the authorities," the entire criminal action against the defendants Alice Hoffman and Johnson be dismissed. This relief is denied. The government, if it elects to do so, may undertake to prove the allegations of the amended informations, without resort to the evidence suppressed by this order, and without resort to evidence which may be determined to be the fruit of the unlawful arrest, search, and seizure of December 11, 1964.

Accordingly, upon the entire record herein, the defendants' motion is granted in part and denied in part, as indicated above.