Sᴛᴀᴛᴇ of Wisconsin,
Plaintiff-Respondent,

v.

David J. Rᴏʙᴇʀsᴏɴ,
Defendant-Appellant.†

Court of Appeals

*No. 2003AP2802–CR. Submitted on briefs June 4, 2004.
—Decided August 25, 2005.*

2005 WI App 195

(Also reported in 704 N.W.2d 302.)

† Petition to review granted 11-11-05.

404

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard D. Martin*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Daniel J. O'Brien*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Deininger, JJ.

¶ 1. DYKMAN, J. David J. Roberson appeals from a judgment of conviction on one count of delivery of cocaine, and from an order denying a postconviction motion for relief. Roberson contends his trial counsel's failure to file a motion to suppress his identification by two officers denied him the effective assistance of counsel. He asserts that the identification was the fruit of an illegal arrest. Further, Roberson argues that the trial court erred when it failed to conduct a *Machner*[1] hearing before deciding the postconviction motion. Granting the illegality of the arrest for the purposes of our analysis, we conclude the officers' identifications of Roberson were admissible. We therefore determine that the record conclusively demonstrates that Roberson is not entitled to relief. Accordingly, we affirm both the order denying the motion for an evidentiary hearing and the judgment of conviction.

## BACKGROUND

¶ 2. Trial testimony established the following facts. Shortly after noon on December 1, 2002, a drug enforcement unit of the Milwaukee Police Department conducted surveillance near the corner of 19th and State Streets in the City of Milwaukee. Detective Mark Wagner observed two men for about twenty minutes whom he suspected of selling narcotics. He then directed Officer Michael Terrell to attempt to buy drugs from the men.

¶ 3. Officer Terrell approached one of the men, later identified as Lindsey Edwards, and told him that he (Terrell) was looking for some "work," meaning

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

cocaine. Edwards led Officer Terrell across the street to a grey car. Seated in the front passenger's side of the car was a man, later identified as David Roberson. Edwards told Roberson: "My guy want three," meaning three cuts of cocaine. Officer Terrell testified he was within three or four feet of Roberson and got a good look at him. Officer Terrell gave Roberson $25 for three cuts and left the area. Officer Terrell then radioed Detective Wagner about the buy and gave him a description of the grey car.

¶ 4.   Detective Wagner notified other officers that Officer Terrell had made a buy and relayed the description of the car. He then spotted the car and noticed it make a number of "weird turns" off streets and alleyways between 20th and 21st Streets. Detective Wagner testified he saw the car stop in front of a residence at 1011 North 21st Street. He testified he observed David Roberson and the driver of the vehicle, later identified as Kirdell Wright, run up the porch, look around, and run into the house. Detective Wagner directed other officers to converge upon the house. Detective Wagner watched the front of the building, while Officer Terrell took up surveillance at the back and Officer Manuel Martinez observed the north side of the house. Officers Mitchell Ward and Bodo Gajevic arrived at the scene approximately two minutes later.

¶ 5.   Shortly thereafter, Officers Ward and Gajevic approached the front door and knocked. Officer Martinez joined them on the front porch. The defendant's mother, Cecilia Roberson, answered the door.

¶ 6.   Officer Ward testified that Ms. Roberson allowed him and Officers Martinez and Gajevic into the house. The officers brought five young men out onto the porch to be viewed by Detective Wagner and Officer

407

Terrell. When none of the five men were identified as David Roberson, Officer Ward testified that Ms. Roberson consented to a search of the house for more subjects. Officer Ward then found David Roberson in an upstairs bedroom and led him outside, where he was positively identified by Detective Wagner and Officer Terrell.

¶ 7. At trial, Ms. Roberson disputed Officer Ward's version of events:

Q: Do you remember at that point the police officer saying to you, Is there anyone else in the house?

A: No, it didn't go like that.

Q: And you replying, No?

A: No.

Q: And then they were given permission to go in, and they find David upstairs; that's not how it happened?

A: No, no.

Ms. Roberson testified that the officers entered shortly after she turned back into the house.

A: I walked into the house and knocked on my sister's bedroom door to ask her to open the door to come out of her room. Just as she opened her door, the police came in and was asking for everybody in the house to come outside.

Q: They came into the home?

A: Yes.

Further, Detective Timothy Graham's interview report with Ms. Roberson avers that "as [Ms. Roberson] was

408

getting everyone out of the house, she yelled upstairs for Monique and them. Ms. Roberson stated she started upstairs to get Monique and the officers pushed past her."

¶ 8.   The State filed a criminal complaint charging David Roberson and Lindsey Edwards with delivery of a controlled substance (cocaine) as parties to a crime. A jury found Roberson guilty but could not reach a verdict as to Edwards. The trial court sentenced Roberson to sixty months' imprisonment.

¶ 9.   On September 11, 2003, Roberson filed a postconviction motion asserting that defense counsel was ineffective for failing to file a pre-trial motion to suppress the officers' identification of him outside the house. The identification, Roberson asserted, was the fruit of an illegal warrantless entry of the home. The trial court denied the motion without an evidentiary hearing, determining that Ms. Roberson and Officer Ward provided "essentially the same testimony the court would have heard had a motion to suppress been filed by trial counsel prior to trial." On the trial record, the court concluded that there was "not a reasonable probability that counsel's failure to file a suppression motion would have altered the result of the proceedings."

¶ 10.   The trial court also questioned whether Ms. Roberson denied that she had consented to the search of her home,[2] and concluded that even if she had, "the court would have found her less credible given the

---

[2] The trial court explained:

The specific question asked Ms. Roberson was: Q: "And then they were given permission to go in, and they find David upstairs; that's not how it happened?" A: "No, no." Ms. Roberson could merely have been objecting to the order in which the events occurred, rather than denying that she gave the officers permission.

evident partiality towards her son." The court then detailed inconsistencies between the testimony of Officer Ward and Ms. Roberson, determining that all "would have been resolved in favor of the State in this case." Roberson appeals.

## STANDARD OF REVIEW

¶ 11.  A circuit court acts within its discretion in denying without a *Machner* hearing a postconviction motion based on ineffective assistance of counsel when:  (1) the defendant has failed to allege sufficient facts in the motion to raise a question of fact; (2) the defendant has presented only conclusory allegations; or (3) the record conclusively demonstrates that the defendant is not entitled to relief. *Nelson v. State*, 54 Wis. 2d 489, 497–98, 195 N.W.2d 629 (1972). "If the motion on its face alleges facts that would entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing." *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).

## DISCUSSION

¶ 12.  Applying the first two prongs of the *Nelson* test to this case, we conclude that Roberson's motion was both factually sufficient and not dependent upon conclusory allegations. The motion asserted that the entry was made without a warrant. The motion also referred to Ms. Roberson's trial testimony and asserted that she denied the officers permission to enter her home.

¶ 13.  The trial court based its denial of the motion on trial testimony and the court's own observation of witnesses. We disagree that trial testimony provided

"essentially the same testimony the court would have heard" in a hearing on a motion to suppress. Ms. Roberson and Officer Ward were not questioned thoroughly at trial about whether Ms. Roberson consented to the entry. And other officers who witnessed the entry did not testify. We do not know if their testimony would have supported Officer Ward's or Ms. Roberson's version of events.

■

¶ 14. Though we reject the trial court's rationale for denying the hearing, we may affirm the court's order if the record conclusively demonstrates that Roberson is not entitled to relief. *See Nelson*, 54 Wis. 2d at 497–98. This question requires us to consider the merits of Roberson's two interdependent claims, that the identification was the fruit of an illegal entry and should therefore have been suppressed and that the failure of his counsel to object to the admission of the identification at trial denied him the effective assistance of counsel.

¶ 15. The Fourth Amendment to the United States Constitution and art. I, sec. 11 of the Wisconsin Constitution establishes the right of citizens to be free from unreasonable searches and seizures.[3] In *Payton v.*

---

[3] Recently, the Wisconsin Supreme Court construed article I, § 8 of the Wisconsin Constitution as providing greater protection against self-incrimination than the Fifth Amendment to the U.S. Constitution, *see State v. Knapp*, 2005 WI 127, ¶¶ 1–2, 285 Wis. 2d 86, 700 N.W.2d 899, and as providing greater due process protection than the Fourteenth Amendment, *State v. Dubose*, 2005 WI 126, ¶¶ 39–41, 285 Wis. 2d 143, 699 N.W.2d 582. However, to date, it has generally construed the search and seizure protections of art. I, sec. 11 of the Wisconsin Constitution to be coextensive with those of the Fourth Amendment to the U.S. Constitution. We therefore interpret the state provision

*New York*, 445 U.S. 573, 588–89 (1980), the Supreme Court established that a warrantless arrest following a nonconsensual entry of the home is illegal unless probable cause and exigent circumstances are present.[4] It is undisputed that the entry here was without a warrant.

¶ 16.　Under *New York v. Harris*, 495 U.S. 14, 19 (1990), the remedy for a warrantless arrest in violation of *Payton* is suppression of any evidence that "bear[s] a sufficiently close relationship to the underlying illegality." *Id.* There, police arrested Harris following a warrantless, nonconsensual entry into the home. *Id.* at 15–16. The court concluded that, although the arrest violated *Payton*, a confession Harris made while in police custody one hour later was not an inadmissible fruit of the arrest. *Id.* at 20. In *Harris*, officers had probable cause to arrest the defendant. *Id.* at 17. The *Harris* court distinguished other cases in which a confession was made when officers lacked probable

---

as providing the same level of protection from governmental searches and seizures as the federal provision. *See, e.g., State v. Fry*, 131 Wis. 2d 153, 388 N.W.2d 565 (1986) ("[W]e are reluctant to construe our state constitutional provision differently than the fourth amendment, especially since the two provisions are intended to protect the same interests and we are unconvinced that the Supreme Court provides less protection than intended by the search and seizure provision of the Wisconsin Constitution."). (Citation omitted.)

[4] Because we conclude that, even granting the illegality of the arrest for the purposes of this analysis, the identification of Roberson by Wagner and Terrell was admissible, and, consequently, that the record conclusively demonstrates that Roberson is not entitled to relief, we need not address the State's contention that the arrest was justified by exigent circumstances. Neither do we address the State's contention that the identification was admissible under the inevitable discovery exception.

cause to arrest. *Id.* at 18–19. The court explained that in such cases, evidence acquired from the defendant should be suppressed

> since the "illegality" [of the arrest] is the absence of probable cause and the wrong consists of the police's having control of the defendant's person at the time he made the challenged statement. In these cases, the "challenged evidence"—i.e., the post arrest confession—is unquestionably "the product of [the] illegal governmental activity"—i.e., the wrongful detention.

*Id.* at 19 (citations omitted; second alteration in original). However, the *Harris* court distinguished *Payton* as protecting the home itself, not the defendant's person, and, as a result, Harris' confession made outside of the home was admissible. "[T]he rule in *Payton* was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects, like Harris, protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime." *Id.* at 17 (citations omitted).

¶ 17.    Thus, *Harris* established the following *per se* rule:    "[W]here the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton*." *Harris*, 495 U.S. at 21. 6 WAYNE R. LaFAVE, SEARCH AND SEIZURE, § 11.4(b) n.210 (4th ed. 2004) citing *Bryant v. United States*, 599 A.2d 1107 (D.C. 1991), adds the following common-sense clarification: "Actually, this [rule] should be read as meaning probable cause *developed apart from* the illegal entry." (Emphasis added.)

413

¶ 18. In *Bryant,* an undercover officer purchased cocaine from Bryant, then provided to other officers a physical description of Bryant and the address of the house where he made the buy. *Id.* at 1108. The arresting officers detained Bryant and brought him onto the street, where the undercover officer drove by and identified him. *Id.* The *Bryant* court held inadmissible the undercover officer's drive-by identification, distinguishing *Harris*:

> We conclude that *Harris* differs from this case in a critical respect. The difference is that in *Harris* the discovery of the defendant inside his home contributed nothing to the evidentiary basis for detaining him. *Harris,* in essence, is a case in which the forbidden entry and search were legally irrelevant to the admissibility of the later-acquired evidence—the defendant's station house confession—because nothing flowed from the illegality. The police had probable cause to arrest Harris regardless of where they found him, and thus the legal basis for seizing him was independent of the fact he was arrested in the home rather than somewhere else . . . .
>
> Unlike the situation in *Harris,* it is not true here that the police acquired nothing from the unlawful entry legally relevant to their ability to detain appellant for a showup identification. On the contrary, it is apparent that the police acquired the evidentiary basis for detaining him only by discovering him in the house as a result of the illegal search. Unlike in *Harris,* it is decisive in this case that the police seized appellant "in the house rather than someplace else," because until they found him there they lacked even the "minimal level of objective justification," necessary to support a detention . . . .

*Bryant,* 599 A.2d at 1111–12 (citations and footnotes omitted).

414

¶ 19. We agree that when, as in *Bryant*, the defendant's location in the home at the time of the illegal arrest provides the legal basis for an arrest, officers must develop an evidentiary basis to arrest apart from the illegal entry for evidence acquired outside of the home to be admissible. To determine whether officers had probable cause to arrest the suspect, the evidentiary significance of the suspect's presence in the home must be subtracted from the accumulated evidence supporting an arrest. The question then is whether the remaining evidence, developed apart from and untainted by the illegal entry, adds up to probable cause.

¶ 20. We agree with Roberson that here, unlike in *Harris* and other cases cited by the State, *see United States v. Villa-Velazquez*, 282 F.3d 553 (8th Cir. 2002), *United States v. Crawford*, 372 F.3d 1048 (9th Cir. 2004), and *Martin v. Mitchell*, 280 F.3d 594 (6th Cir. 2002), the defendant's presence inside the home had some evidentiary significance at the time of the arrest. Officers followed Roberson from the crime scene to the home. They observed Roberson exit the car and enter the home. When he entered the home, Roberson was known to police as a suspect of a certain description believed to be located in a certain home. Thus, Roberson's presence in the home provided some additional evidentiary support for an arrest. Other individuals with physical characteristics resembling Roberson were likely present in Milwaukee on that day. But it is likely that the only individual resembling Roberson at that home on that day was Roberson.

¶ 21. However, we disagree with Roberson's assertion that without the evidentiary significance of his

415

presence at the home, officers would have lacked probable cause to arrest him. Unlike in *Bryant*, the undisputed facts here show that officers had a sufficient evidentiary basis to arrest Roberson developed apart from the evidence of his location in the home. Detective Wagner observed Roberson engaging in drug activity for approximately twenty-five minutes. Officer Terrell purchased drugs from Roberson. Moreover, they observed him as he left the street corner and observed the vehicle from which he left as a passenger. Detective Wagner's extended observation of Roberson and Terrell's up-close contact with him during the drug buy were enough to develop probable cause necessary for an arrest apart from Roberson's location in the home.

¶ 22.    Roberson contends that the particular officers who arrested him inside of the house lacked probable cause because they, unlike Wagner and Terrell, did not observe him personally, and made the arrest only on Wagner's and Terrell's incomplete descriptions of him. This argument is based on a mistaken view of the law. Where officers are working in concert as they were here, the arresting officers need not have personal knowledge sufficient to establish probable cause for the arrest and may rely on the collective information of the police department when making an arrest. *State v. Mabra*, 61 Wis. 2d 613, 625, 213 N.W.2d 545 (1974). "The police force is considered as a unit and where there is police-channel communication to the arresting officer and he acts in good faith thereon, the arrest is based on probable cause when such facts exist within the police department." *Id.* at 625–26. Here, the arresting officers were in close communication with Detective Wagner and Officer Terrell. The facts known to Detective

Wagner and Officer Terrell provided the arresting officers with probable cause to arrest Roberson.

¶ 23. Roberson cites *People v. Gethers*, 654 N.E.2d 102 (N.Y. 1995), a case in which the New York Court of Appeals excluded an undercover officer's showup identification following an arrest. *Gethers* is inapposite, however, because the court applied the exclusionary rule after concluding that the arresting officer lacked probable cause to arrest. *Id.* at 161–62. *Gethers'* result is unsurprising because "the 'challenged evidence' . . . [was] unquestionably 'the product of [the] illegal governmental activity'—i.e., the wrongful detention." *Harris*, 495 U.S. at 19. In contrast, evidence acquired outside of the home after an in-home arrest in violation of *Payton* is not a product of the illegal governmental activity, if officers had probable cause to arrest developed apart from the illegal entry.

¶ 24. Because we conclude the officers' identifications of Roberson were admissible, Roberson cannot demonstrate that alleged ineffectiveness of counsel prejudiced the outcome of his case. We therefore determine that the record conclusively demonstrates that he is not entitled to relief and affirm the trial court's denial of his motion for an evidentiary hearing. *See Nelson*, 54 Wis. 2d at 497–98.

*By the Court.*—Judgment and order affirmed.